IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PLAINTIFF(S)<br>Jody Ramona Doan<br><br>vs.<br><br>DEFENDANT(S)<br>Charleston County School District<br>CHAD VALE, individually and in his official capacity;<br>RICHARD GORDON, individually and in his official capacity;<br>STEVE LARSON, individually and in his official capacity;<br>TIMOTHY THORNE, individually and in his official capacity;<br>DOES 1–10, | CIVIL ACTION No.: 2:26-cv-1082-DCN-SVH<br><br>**COMPLAINT**<br>(Jury Trial Requested) |

## INTRODUCTION

This case is about how the school district fired a stroke survivor. Plaintiff Jody Ramona Doan had worked successfully for the Charleston County School District for more than a decade. After suffering a stroke that caused significant neurological impairments, she returned to work with physician-imposed restrictions and continued performing her job successfully. Rather than engage in the interactive process required by federal disability law or support her recovery, the District terminated her employment less than two months later, citing a minor timekeeping discrepancy that Plaintiff had already reported and attempted to correct as pretext.

## PARTIES

1. Plaintiff Jody Ramona Doan is a resident of South Carolina.

   a. Additionally, Plaintiff has exhausted her administrative remedies. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. This action is filed within the statutory time period.

2. Defendant Charleston County School District is a public school district organized under the laws of South Carolina and an employer within the meaning of and subject to the ADA, Rehabilitation Act, and FMLA.

3. Defendant Chad Vale was at all relevant times a supervisory employee of Charleston County School District and Plaintiff's direct supervisor within the Career and Technical Education department. Vale participated in decisions regarding Plaintiff's work assignments, medical restrictions, and termination.

4. Defendant Richard Gordon was at all relevant times a senior administrator within the District's Career and Technical Education department and had supervisory authority over Plaintiff's position. Gordon participated in decisions affecting Plaintiff's employment and termination.

5. Defendant Steve Larson was at all relevant times the principal of St. Johns High School and exercised authority over Plaintiff's work activities within that school. Larson participated in decisions affecting Plaintiff's employment and treatment within the District.

6. Defendant Timothy Thorne was at all relevant times an administrator within the District and previously served as principal at James Island Charter High School, where Plaintiff worked prior to her Career Specialist position. Thorne exercised supervisory authority over Plaintiff and participated in employment-related decisions affecting Plaintiff.

7. Each individual defendant acted under color of state law and within the scope of their employment with Charleston County School District.

8. Each individual defendant is sued in his individual capacity and official capacity for violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. §1983.

## JURISDICTION AND VENUE

9. This action arises under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. §794, and the Family and Medical Leave Act, 29 U.S.C. §2601 et seq. Defendant receives federal financial assistance and is therefore subject to the Rehabilitation Act.

10. This Court has jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), because Plaintiff seeks redress for the deprivation of rights secured by the Constitution and laws of the United States under color of state law.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

12. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

13. Venue is proper in this Court because the acts complained of occurred in Charleston County, South Carolina.

## FACTUAL ALLEGATIONS

14. Plaintiff began employment with Charleston County School District and over the next decade she served in several educational support roles including special education assistant, literacy support specialist, and administrative staff member.

15. This case arises from the Charleston County School District's unlawful treatment of a long-serving employee who developed a serious autoimmune condition and repeatedly requested reasonable workplace accommodations. Rather than engaging in the interactive process required by federal law, the district ignored medical limitations, interfered with leave protections, and ultimately forced Plaintiff out of her position.

16. Plaintiff was eventually hired as a Career Specialist within the District's Career and Technical Education department.

17. In that role Plaintiff worked with multiple schools, assisting students with career exploration, workforce preparation, and vocational program placement.

18. Plaintiff performed her duties successfully and remained employed by the District for more than ten years.

19. During the course of her employment Plaintiff contracted COVID-19 multiple times.

20. Following those infections Plaintiff developed a chronic autoimmune condition producing symptoms similar to rheumatoid arthritis and fibromyalgia.

21. In April 2024 Plaintiff suffered a hemorrhagic stroke involving areas of the brain including the basal ganglia.

22. The stroke caused serious neurological symptoms including cognitive processing delays, memory impairment, light sensitivity, noise sensitivity, speech disruption, and depression.

23. These conditions substantially limited major life activities including thinking, concentrating, neurological function, seeing, and working.

24. Plaintiff was hospitalized and later discharged with medical restrictions related to her stroke recovery.

25. Plaintiff's supervisors were aware of her medical condition.

26. Plaintiff's husband informed them while she was hospitalized and Plaintiff personally discussed the condition with supervisors after returning to work.

27. Plaintiff returned to work in August 2024 with medical restrictions provided by her physician.

28. These restrictions included intermittent leave as needed, accommodations for light sensitivity and noise sensitivity, and other limitations related to her neurological recovery.

29. Plaintiff provided this documentation to the District.

30. The District did not engage in any meaningful interactive process regarding accommodation of Plaintiff's disability.

31. Instead, Plaintiff's supervisor asked her to request that her physician modify or remove one of her medical restrictions.

32. Plaintiff continued working and performing the duties of her position.

33. In September 2024 Plaintiff inadvertently failed to properly clock in on the District's timekeeping system on one occasion.

34. Plaintiff immediately reported the error to her supervisor and requested correction of the time record.

35. Despite Plaintiff's self-reporting of the issue, the District later characterized the incident as "time clock fraud."

36. On October 4, 2024 the District terminated Plaintiff's employment.

37. The termination occurred less than two months after Plaintiff returned to work following her stroke and within weeks of Plaintiff's request for disability accommodations and shortly after she returned from protected medical leave.

38. The district cited the timekeeping issue as the reason for termination.

39. Plaintiff had no prior disciplinary record and had attempted to correct the alleged discrepancy.

40. The stated reason for termination was therefore pretext for disability discrimination and retaliation; moreover, the stated reason for termination was false and served as a pretext for disability discrimination and retaliation.

41. Defendant Charleston County School District has, upon information and belief, maintained policies, customs, or practices that discouraged or resisted accommodation requests made by employees suffering from serious medical conditions, including neurological and autoimmune disorders. Defendant's failure to engage in the interactive process in Plaintiff's case was consistent with that broader institutional practice.

42. Upon information and belief, Defendant had prior notice through internal complaints, employee reports, and administrative charges that supervisors within the District were failing to comply with federal disability accommodation requirements. Despite this notice, Defendant failed to adequately train, supervise, or discipline its administrators regarding compliance with the Americans with Disabilities Act and the Rehabilitation Act.

43. Reasonable accommodations were readily available that would have allowed Plaintiff to continue performing the essential functions of her position, including schedule flexibility, minor duty modifications, and temporary adjustments consistent with her physician's recommendations.

44. As a public educational institution entrusted with the welfare of students and employees, Defendant was obligated to follow federal disability law and ensure that employees recovering from serious medical conditions were treated with fairness and dignity.

45. The decision to terminate Plaintiff's employment was made or ratified by supervisory administrators within the District, including Defendants Vale, Gordon, and other District officials acting under color of state law.

46.     All Defendants, acting under color of state law, deprived Plaintiff of her property interest in continued employment without providing the procedural protections required by law.

## COUNT I
## VIOLATION OF PROCEDURAL DUE PROCESS
(42 U.S.C. § 1983 – Fourteenth Amendment)

47.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

48.     Plaintiff was a public employee of Defendant Charleston County School District.

49.     Plaintiff possessed a protected property interest in her continued employment arising from Defendant's policies, procedures, and contractual employment relationship.

50.     Plaintiff possessed a protected property interest in her continued employment arising from Defendant's policies, procedures, established disciplinary rules, and contractual employment relationship.

51.     Those policies required fair investigation and disciplinary procedures prior to termination.

52.     Defendant Administrators deprived Plaintiff of that property interest when it terminated her employment without providing the procedural protections required by law and by Defendant's own policies.

53.     Defendant's actions were taken under color of state law and violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

54.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, and other injuries.

55.     Defendant is liable to Plaintiff under 42 U.S.C. §1983.

## COUNT II
## DISABILITY DISCRIMINATION
(Americans with Disabilities Act 42 U.S.C. §§ 12102, 12111(8), 12112(a))

56. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

57. Plaintiff is an individual with a disability within the meaning of the ADA.

58. Plaintiff was qualified to perform the essential functions of her job with reasonable accommodations.

59. Defendant knew of Plaintiff's disability and the medical restrictions associated with her stroke recovery.

60. Defendant terminated Plaintiff's employment because of her disability.

61. Defendant's actions violated the ADA.

## COUNT III
## FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
(ADA 42 U.S.C. §§ 12111(8), 12112(a), 12112(b)(5)(A)
29 C.F.R. § 1630.2(o)(3))

62. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

63. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

64. Plaintiff suffered a hemorrhagic stroke that resulted in neurological impairments affecting, among other things, mobility, balance, and cognitive endurance.

65. These impairments substantially limited one or more of Plaintiff's major life activities, including walking, concentrating, thinking, and working.

66. Plaintiff's disability and resulting limitations were known to Defendant.

67. Upon returning to work, Plaintiff provided medical documentation identifying her limitations and the need for reasonable accommodations while she continued recovering from her stroke.

68. Plaintiff requested accommodations that would allow her to continue performing the essential functions of her position, including reasonable flexibility relating to scheduling and job duties consistent with her physician's guidance.

69. Under the ADA, once an employer becomes aware of an employee's disability and request for accommodation, the employer is required to engage in a good-faith interactive process with the employee to identify reasonable accommodations that would enable the employee to perform the essential functions of the position.

70. Defendant failed and refused to engage in a meaningful interactive process with Plaintiff.

71. Defendant did not meet with Plaintiff to discuss possible accommodations, explore modifications to her duties, or otherwise attempt to determine how Plaintiff could continue performing her job while recovering from her stroke.

72. Instead of participating in the interactive process required by federal law, Defendant terminated Plaintiff's employment shortly after her return to work and shortly after she requested accommodations.

73. Reasonable accommodations were available that would have enabled Plaintiff to continue performing the essential functions of her position and were available to her peers.

74. Defendant's refusal to engage in the interactive process prevented the identification and implementation of reasonable accommodations that would have allowed Plaintiff to continue performing the essential functions of her position.

75. Defendant's conduct violated the Americans with Disabilities Act.

76. As a direct and proximate result of Defendant's failure to engage in the interactive process, Plaintiff suffered lost wages, lost benefits, emotional distress, and other damages.

77. Defendant's actions were intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights.

## COUNT IV
## FAILURE TO ACCOMMODATE
(Americans with Disabilities Act 42 U.S.C. §§ 12111(8), 12112(b)(5)(A)
29 C.F.R. § 1630.2(o))

78. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

79. Plaintiff requested reasonable accommodations supported by medical documentation.

80. Defendant failed to engage in the required interactive process and failed to provide reasonable accommodations.

81. Defendant's conduct violated the ADA.

## COUNT V
## RETALIATION
(Americans with Disabilities Act 42 U.S.C. §§ 12203(a), 12112(a))

82. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

83. Plaintiff engaged in protected activity by requesting accommodations and asserting her rights under disability law.

84. Defendant terminated Plaintiff in retaliation for that protected activity.

85. The temporal proximity between Plaintiff's accommodation requests and her termination demonstrates a causal connection between the protected activity and the adverse employment action.

## COUNT VI
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE
**(**Rehabilitation Act of 1973 29 U.S.C. §§ 701, 794(a)**)**

86. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

87. Defendant receives federal funding and is therefore subject to Section 504 of the Rehabilitation Act.

88. Defendant discriminated against Plaintiff and failed to accommodate her disability in violation of that statute.

## COUNT VII
## FMLA INTERFERENCE AND RETALIATION
(29 U.S.C. §§ 2612(a)(1), 2614(a), 2615(a)(1))

89. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

90. Plaintiff was an eligible employee under the Family and Medical Leave Act.

91. Plaintiff was entitled to leave protections under the Family and Medical Leave Act.

92. Plaintiff exercised her rights under the FMLA by taking protected medical leave related to her stroke.

93. Defendant interfered with Plaintiff's rights under the FMLA and terminated her employment after her return from protected leave.

## COUNT VIII
## BREACH OF CONTRACT / WRONGFUL TERMINATION IN BREACH OF EMPLOYMENT CONTRACT

94. Plaintiff's employment was governed by written employment agreements, personnel manuals, and District policies.

95. These documents established procedures governing discipline, investigation of alleged misconduct, payroll corrections, leave administration, and termination.

96. Defendant's personnel policies and disciplinary procedures contained mandatory language governing investigation and discipline and did not contain enforceable disclaimers negating contractual intent.

97. These policies contained mandatory procedures governing investigation of alleged misconduct, correction of payroll errors, and disciplinary review prior to termination.

98. Defendant failed to conduct the investigation required by its policies before labeling Plaintiff's self-reported timekeeping error as misconduct.

99. Those documents formed part of Plaintiff's employment contract.

100. Defendant breached those contractual obligations by terminating Plaintiff without following required disciplinary and investigative procedures.

101. Defendant further breached the contract by misclassifying a self-reported administrative error as fraud and terminating Plaintiff without providing the procedural protections required by District policy.

102. As a result Plaintiff suffered damages including lost wages and lost employment benefits.

## COUNT IX
## PROMISSORY ESTOPPEL

103. Defendant, through its supervisors and representatives, made promises to Plaintiff that it would support her return to work following her stroke and would accommodate her medical limitations.

104. Defendant further represented that it would work with Plaintiff regarding medical restrictions and job duties during her recovery.

105. Plaintiff reasonably relied on these promises in returning to work and continuing her employment with the District.

106. Defendant later terminated Plaintiff's employment despite those promises.

107. Plaintiff suffered damages as a result of that reliance.

108. Defendant is therefore liable under the doctrine of promissory estoppel.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS / OUTRAGE

109. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

110. Defendant, through its supervisors and agents, knowingly and recklessly engaged in conduct toward Plaintiff that was extreme and outrageous.

111. At the time of the events described above, Defendant knew that Plaintiff had recently suffered a hemorrhagic stroke and was recovering from serious neurological impairments.

112. Despite this knowledge, Defendant refused to engage in the interactive accommodation process required by law and instead characterized Plaintiff's self-reported administrative error as "fraud" and terminated her employment.

113. The conduct described above was undertaken with reckless disregard for the severe emotional distress such actions would cause to a recently hospitalized employee recovering from a life-threatening medical condition.

114. Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

115. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, humiliation, anxiety, and other damages.

116. Defendant is therefore liable to Plaintiff under the South Carolina tort of intentional infliction of emotional distress.

## COUNT XI
## DEFAMATION

117. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

118. Defendants, through its employees and agents acting within the scope of their employment, made false statements concerning Plaintiff.

119. Specifically, Defendant characterized Plaintiff's self-reported timekeeping discrepancy as "time clock fraud."

120. The statement was false.

121. Defendant communicated this accusation to individuals within the District and others with responsibility for personnel matters.

122. The statement tended to harm Plaintiff's professional reputation and to subject her to ridicule and contempt within her professional community.

123. Defendant acted negligently or with actual malice in publishing the statement without conducting an adequate investigation and despite knowing the circumstances surrounding the self-reported timekeeping error.

124. As a direct and proximate result of Defendant's defamatory statements, Plaintiff suffered reputational injury, economic damages, and emotional distress.

125. Defendant published this accusation to individuals within the District and other third parties responsible for personnel matters.

126. Defendant is therefore liable to Plaintiff for defamation.

## COUNT XII
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION

127. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

128. Defendant had a duty to exercise reasonable care in hiring, supervising, and retaining its employees and supervisors.

129. Defendant knew or should have known that certain supervisors and decision-makers involved in Plaintiff's termination were unfit to exercise disciplinary authority in a lawful and non-discriminatory manner.

130. Despite this knowledge, Defendant failed to properly supervise, train, or discipline those individuals.

131. Defendant further failed to ensure that supervisory employees complied with federal disability law and the District's own policies regarding accommodation of employees recovering from serious medical conditions.

132. As a result of Defendant's negligent hiring, retention, and supervision of its employees, Plaintiff was subjected to discriminatory and retaliatory conduct and ultimately terminated.

133. Defendant's negligence was a direct and proximate cause of Plaintiff's damages.

## COUNT XIII
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

134. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

135. Plaintiff's employment relationship with Defendant was governed by written employment agreements, personnel manuals, and District policies.

136. Under South Carolina law, every contract contains an implied covenant of good faith and fair dealing.

137. Defendant had a duty to exercise its contractual discretion in good faith and in a manner consistent with the reasonable expectations created by its policies and procedures.

138. Defendant breached that duty by intentionally mischaracterizing Plaintiff's self-reported administrative error as fraud, by refusing to follow its own investigative and disciplinary procedures, and by terminating Plaintiff shortly after she requested accommodations related to a serious medical condition.

139. Defendant's actions were undertaken in bad faith and for improper purposes.

140. As a direct and proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff suffered lost wages, lost benefits, and other damages.

## DAMAGES

141. As a direct result of Defendant's conduct, Plaintiff has suffered:

    a. lost wages and salary;

    b. lost employment benefits including health insurance, retirement contributions, and other employment-related benefits;

    c. loss of future earnings and diminished earning capacity;

    d. loss of professional reputation and career opportunities;

    e. emotional distress, mental anguish, humiliation, and loss of enjoyment of life;

    f. other consequential and compensatory damages;

    g. prejudgment interest as permitted by law;

    h. attorneys' fees and litigation costs pursuant to applicable federal statutes including the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act; and

    i. all other damages recoverable under federal and South Carolina law.

## JURY DEMAND

142. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR EQUITABLE RELIEF

143. Plaintiff seeks equitable relief as authorized by the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act.

144. Defendant's conduct has caused Plaintiff the loss of her employment, income, benefits, and professional standing.

145. Here Plaintiff is entitled to reinstatement to her former position or to a substantially equivalent position with restoration of seniority, benefits, and all other rights and privileges of employment.

146. Since reinstatement is not be feasible, Plaintiff seeks an award of front pay sufficient to compensate her for the loss of future earnings and employment benefits caused by Defendant's unlawful conduct.

147. Plaintiff further seeks such injunctive relief as may be necessary to ensure that Defendant complies with federal disability and medical leave laws, including policies and practices governing the accommodation of employees recovering from serious medical conditions.

## PRAYER FOR RELIEF

148. Plaintiff respectfully requests judgment against Defendant for:

   a. back pay;

   b. front pay;

   c. restoration of lost employment benefits and retirement contributions;

   d. compensatory damages;

   e. punitive damages to the extent permitted by law;

   f. attorneys' fees and costs;

   g. prejudgment and post-judgment interest as allowed by law; and

   h. such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED:**

**The Whitsitt Law Firm**
/s Michael A. Whitsitt
Fed. Bar Number #12505
78 Folly Road Suite B9
#1405
Tele:   8435487551
Email: Michael@WhitsittLawfirm.com
Charleston, South Carolina 29407
*Attorney for Plaintiff*

March 13, 2026